# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

TIFFANY DAHLQUIST,

      Plaintiff,

v.

CITY OF WICHITA, et al.,

      Defendants.

Case No. 18-4033-DDC-TJJ

## MEMORANDUM AND ORDER

Plaintiff Tiffany Dahlquist brings this employment discrimination action against the City of Wichita, City Manager Robert Layton, Chief of Police for the Wichita Police Department ("WPD") Gordon Ramsey, and WPD Detective Lance Oldridge. In her First Amended Complaint (Doc. 13), plaintiff asserts sex discrimination and harassment claims under Title VII, 42 U.S.C. §§ 2000e–2000e-17, against the City of Wichita, and various claims under Kansas state law against all defendants.

This matter is before the court on defendants' Motions to Dismiss (Docs. 16 & 18) and plaintiff's Motion for Leave to File a Second Amended Complaint (Doc. 47). On February 1, 2019, plaintiff filed a two-page motion seeking leave to file a Second Amended Complaint. Doc. 47. Plaintiff's motion provides no substantive argument for why the court should grant her leave to file her proposed pleading. On February 14 and 15, 2019, defendants timely filed Responses opposing plaintiff's Motion for Leave. Docs. 48 & 49. Plaintiff never has filed a Reply. And her time for doing so has expired. *See* D. Kan. Rule 6.1(d)(1) (requiring parties to file and serve Replies within 14 days of Response).

For reasons explained below, the court denies plaintiff's Motion for Leave to File a Second Amended Complaint (Doc. 47). The court concludes that plaintiff's proposed Second Amended Complaint fails to state plausible Title VII claims. The court thus finds that plaintiff's proposed amendments—at least as they would affect her federal claims—are futile. So, for reasons explained below, the court denies plaintiff's Motion for Leave to File a Second Amended Complaint to the extent it seeks to amend her federal Title VII claims. The court declines to decide the portion of plaintiff's Motion for Leave to File a Second Amended Complaint seeking to amend her state law claims. And the court denies this portion of plaintiff's motion without prejudice.

Also, the court concludes that plaintiff's First Amended Complaint—the operative Complaint, currently—fails to state viable Title VII claims. Thus, the court reaches the following decisions:

- The court grants City of Wichita, Robert Layton, and Gordon Ramsey's Motion to Dismiss Motion to Dismiss (Doc. 18) in part and denies it in part. The court dismisses plaintiff's federal Title VII claims against defendant City of Wichita under Fed. R. Civ. P. 12(b)(6) because they fail to state a plausible claim for relief. The court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims, and thus dismisses the state law claims asserted against defendants City of Wichita, Robert Layton, and Gordon Ramsey without prejudice.

- The court denies defendant Lance Oldridge's Motion to Dismiss (Doc. 16) without prejudice. Plaintiff asserts only state law claims against defendant Oldridge, and the court declines to exercise supplemental jurisdiction over those claims. The court thus dismisses plaintiff's state law claims against defendant Oldridge without prejudice.

The court explains how it reaches these rulings, below.

## I. Background

The following facts come from plaintiff's First Amended Complaint—the operative Complaint in the case. Doc. 13. Plaintiff asserts these same factual allegations in her proposed Second Amended Complaint. Doc. 47-1.

From January 18, 2011, to February 13, 2017, plaintiff worked for the WPD as a Police Officer for Patrol. The majority of the WPD's law enforcement officers are male.

On September 11, 2016, the WPD received a traffic report from a driver who alleged that plaintiff had struck the other driver's vehicle while plaintiff was driving her personal vehicle and had failed to stop. The driver reported plaintiff's license plate number to WPD officers as the license assigned to the vehicle that struck her. A WPD officer contacted plaintiff (who was off-duty), and asked her to come to the police station. Plaintiff complied with the request. When plaintiff arrived at the police station, the WPD officer told plaintiff that a driver had identified her vehicle as one that had struck the driver's vehicle earlier in the day. Plaintiff denied striking another vehicle, and told the officer she would have stopped if she had hit another vehicle.

Plaintiff allowed the WPD officer to inspect her vehicle. Plaintiff's vehicle had no damage suggesting it had struck another vehicle. Nevertheless, the WPD officer asked plaintiff to complete a Motor Vehicle Accident Report ("MVAR"). Plaintiff refused to fill out the MVAR because, she believed, she had not had an accident. Later, the Fraternal Order of Police ("FOP") advised plaintiff that she should fill out the MVAR. Plaintiff reluctantly filled out the MVAR, reporting that she was informed she hit another vehicle but neither vehicle had any damage.

On September 12, 2016, the WPD assigned the matter to Detective Mike Amy for criminal investigation. Also, plaintiff learned that the WPD had initiated an internal investigation into the matter. Plaintiff asserts that Detective Amy conducted an aggressive criminal investigation. Among other things, Detective Amy interviewed employees of a restaurant that plaintiff patronized on September 11, 2016, and asked them about plaintiff's alcohol consumption at the restaurant. He interviewed the driver who made the traffic report, inspected her car, and showed her a photo lineup. He subjected plaintiff's vehicle to more inspection. And, Detective Amy and Detective Oldridge secured surveillance video and a copy of a receipt from a liquor store showing that plaintiff had purchased alcohol.

On September 15, 2016, Detective Oldridge called plaintiff and asked her to meet with him. When she arrived at the meeting, Detective Oldridge gave plaintiff a document titled Official Notification of Administrative Internal Investigation and informed her of her *Garrity* rights.[1] Plaintiff asked a FOP representative to attend the meeting with her. The FOP representative told Detective Oldridge that it was highly unusual to commence an internal investigation before a criminal investigation's conclusion. Detective Oldridge responded that he needed to initiate the internal investigation that day because plaintiff was scheduled to leave town the next weekend.

On September 28, 2016, plaintiff learned that Detective Amy had presented the results of the criminal investigation to the district attorney. The district attorney declined to prosecute plaintiff because there wasn't sufficient evidence.

---

[1] Plaintiff's Complaint doesn't explain what she means by *Garrity* rights. The court assumes she is referring to the Supreme Court's decision in *Garrity v. New Jersey*, 385 U.S. 493 (1967), where the Court held that the Fourteenth Amendment prohibits use of coerced statements in a criminal proceeding when the statement is acquired under a threat of removing the person from a public position. *Id.* at 500.

On October 12, 2016, Detective Oldridge sent an email to plaintiff asking to interview her again. Plaintiff's FOP representative told plaintiff that the interview was scheduled for October 25, 2016, but later the FOP representative told plaintiff the interview was cancelled. On October 25, 2016, Detective Oldridge called plaintiff and asked why she wasn't at the interview. When plaintiff explained that her FOP representative had told her that the interview was cancelled, Detective Oldridge became angry and combative. He told plaintiff that the Professional Standards Board controls internal investigations, not the FOP.

On November 4, 2016, two WPD officers interviewed plaintiff as part of an investigation into Detective Oldridge's conduct. During the interview, plaintiff complained that Detective Oldridge had violated her constitutional rights in the criminal matter by commencing an aggressive internal investigation during a criminal investigation. Also, plaintiff complained, Detective Oldridge had spoken with her in an unprofessional manner.

On January 3, 2017, plaintiff learned from her FOP representative that, based on the results of its internal investigation, the Professional Standards Board was planning to serve her with an F Penalty—discipline that is punishable by termination. The FOP representative also told plaintiff that the WPD would give her a due process hearing before termination. Plaintiff met with the FOP on January 10, 2017, to review some of the evidence collected in the internal investigation. During the review, plaintiff found several errors in a WPD officer's report about his investigation.

On January 11, 2017, plaintiff attended a due process hearing. No disciplinary action was taken at the hearing. Instead, the WPD decided to postpone disciplinary action until it could clarify information contained in a WPD officer's report.

On February 13, 2017, plaintiff received a letter from the WPD informing her that it was terminating her employment effective February 13, 2017, at 5:00 p.m. The letter recited that: "[o]n September 11, 2016, you were reported to be involved in a hit and run accident. During the subsequent investigation it was determined that you departed from the truth." Doc. 13 at 10 (Am. Compl. ¶ 71). On February 16, 2017, plaintiff met with WPD Human Resources. And, on February 17, 2017, plaintiff's FOP representative told plaintiff that WPD Human Resources had overturned her termination and reinstated her employment with the WPD.

When plaintiff returned to work, she was the subject of false rumors and harassment. Specifically, plaintiff contends, WPD officials released false information to news outlets. And, the *Wichita Eagle* newspaper allegedly ran stories that falsely accused her of drinking and driving and being involved in a hit-and-run accident. Plaintiff contends that the hostile circumstances she faced at work forced her to resign from the WPD and accept a lower paying position with another employer.

**II. Analysis**

The court first considers plaintiff's Motion for Leave to File a Second Amended Complaint. It then addresses defendants' Motions to Dismiss.

**A. Plaintiff's Motion for Leave to File a Second Amended Complaint**

Plaintiff seeks leave to file a Second Amended Complaint under Federal Rule of Civil Procedure 15(a)(2). Doc. 47. Defendants oppose plaintiff's motion because, they contend, the proposed amendments are futile. Docs. 48 & 49. Defendants assert that plaintiff's claims—as alleged in the proposed Second Amended Complaint—fail to state a claim for relief. And thus, defendants argue, her proposed Second Amended Complaint cannot survive dismissal under Rule 12(b)(6).

Also, defendant Oldridge argues that the court should deny plaintiff's Motion for Leave to Amend because she didn't file a Memorandum supporting her motion, as the local rules require. Our court's local rules provide as follows:

> A brief or memorandum must accompany all motions unless:
> (1) the motion is joint or unopposed;
> (2) the motion is filed pursuant to D. Kan. Rule 6.1 or 77.2;
> (3) these rules otherwise provide; or
> (4) the court relieves the parties of complying with the requirement.

D. Kan. Rule 7.1(a). D. Kan. Rule 7.4(a) provides, "The court *may* summarily deny a motion not accompanied by a required brief or memorandum." D. Kan. Rule 7.4(a) (emphasis added). Here, defendant Oldridge urges the court to deny plaintiff's Motion for Leave to Amend because plaintiff hasn't filed a Memorandum supporting her motion, and thus, she hasn't provided any argument or authority explaining why the court should grant her leave to file the proposed Second Amended Complaint. The local rules give the court discretion to deny a motion summarily when a party fails to file an accompanying memorandum. *See* D. Kan. Rule 7.4(a) (providing that the court *may* deny the motion summarily). Also, the local rules allow the court to relieve a party from complying with the requirement to file a memorandum supporting a motion. D. Kan. Rule 7.1(a)(4). Exercising its discretion, the court declines to deny plaintiff's Motion for Leave to Amend simply because she failed to submit a corresponding Memorandum with the motion. Instead, the court considers the motion on its merits, as explained below.

### 1. Legal Standard

Federal Rule of Civil Procedure 15(a)(2) provides that, after an opposing party files a responsive pleading, a party may amend its pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Rule instructs that courts should "freely give leave [to amend] when justice so requires." *Id.* The decision whether to grant leave

to amend is within the court's discretion. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citations omitted). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason . . . ." *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001) (citations omitted).

Here, defendants argue that plaintiff's proposed Second Amended Complaint is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). The court thus applies the standard governing motions to dismiss under Rule 12(b)(6) to determine whether plaintiffs' proposed amendment here is futile. *See, e.g.*, *Little v. Portfolio Recovery Assoc., LLC*, 548 F. App'x 514, 515 (10th Cir. 2013).

Rule 12(b)(6) allows an opposing party to seek dismissal of a pleading that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a complaint to survive a motion to dismiss under Rule 12(b)(6), the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co.*,

555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must assume that the factual allegations in the complaint are true. *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 555). But the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Also, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

### 2. Plaintiff's Claims

Defendants argue that plaintiff's proposed Second Amended Complaint is futile because none of the claims it would assert against defendants can survive a Rule 12(b)(6) motion to dismiss. The proposed Second Amended Complaint identifies six claims: (1) a Title VII sex discrimination claim against defendant City of Wichita; (2) a Title VII harassment claim against defendant City of Wichita; (3) an intentional infliction of emotional distress claim asserted against defendant City of Wichita under Kansas law; (4) a negligent infliction of emotional distress claim asserted against all defendants under Kansas law; (5) a negligent supervision claim asserted against all defendants under Kansas law; and (6) a defamation claim asserted against defendant Oldridge under Kansas law.

Plaintiff's First Amended Complaint does not differ significantly from her proposed Second Amended Complaint. The proposed Second Amended Complaint would add some

9

factual allegations and amend the defamation claim under Kansas law. But plaintiff's federal Title VII claims are identical in both pleadings. *Compare* Doc. 47-1 at 14–16 (Second Am. Compl. ¶¶ 92–103) *with* Doc. 13 at 11–13 (First Am. Compl. ¶¶ 78–89).

The court exercises federal question jurisdiction over this action under 28 U.S.C. § 1331 because plaintiff has asserted federal Title VII claims in her first and second causes of action. And it exercises supplemental jurisdiction under 28 U.S.C. § 1367 over plaintiff's remaining state law claims. Because the court's jurisdiction depends on the viability of plaintiff's federal claims, the court first considers whether plaintiff's proposed Second Amended Complaint states plausible Title VII claims against defendant City of Wichita.

### a. Title VII Discrimination Claim

The proposed Second Amended Complaint's "First Cause of Action" asserts that defendant City of Wichita violated Title VII by discriminating against plaintiff based on her sex in the terms and conditions of her employment. Doc. 47-1 at 14–15 (Second Am. Compl. ¶¶ 92–96). Defendants argue that plaintiff's proposed Second Amended Complaint fails to assert any facts linking her Title VII claim to any unlawful sex discrimination. The court agrees.

Generally, the proposed Second Amended Complaint alleges that the City of Wichita treated plaintiff unfairly when it terminated her employment on February 13, 2017, and after reinstating her employment, constructively discharged plaintiff. And, the proposed pleading makes conclusory assertions that the City of Wichita discriminated against plaintiffs based on her sex. *See* Doc. 47-1 at 15 (Second Am. Compl. ¶¶ 93, 95). But these conclusory recitals are the type deemed insufficient to plead a plausible claim under the *Twombly/Iqbal* standard. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1194 (10th Cir. 2012) (affirming dismissal of plaintiff's Title VII and FMLA claims under Rule 12(b)(6) when plaintiff based her claims

"solely on the fact that she is Muslim and Arab-American, that she complained about discrimination, that she complained about the denial of FMLA leave, and that Defendant terminated her," but provided nothing more than "sheer speculation to link" defendant's actions to a discriminatory or retaliatory motive).

Other than conclusory assertions of sex discrimination, the only fact that plaintiff alleges to support her sex discrimination claim is that "[t]he majority of the law enforcement officers employed by the WPD are male." Doc. 47-1 at 3 (Second Am. Compl. ¶ 20). This fact alone won't support an inference that the City of Wichita discriminated against *plaintiff* based on her sex. And the proposed Second Amended Complaint lacks any other facts that might support an inference of sex discrimination. For example, the proposed pleading includes no factual allegations asserting that the City of Wichita treated plaintiff differently than other similarly situated male employees, or that the City of Wichita's actions were pretext for sex discrimination. *See Khalik*, 671 F.3d at 1194 (explaining the kinds of factual allegations that can establish the necessary "link" between defendant's actions and a discriminatory motive to state a plausible Title VII claim). Instead, plaintiff's proposed Second Amended Complaint provides "nothing other than sheer speculation to link the . . . termination to a discriminatory . . . motive" based on plaintiff's sex. *Id.*

This is not the first time that defendants have argued that plaintiff's allegations fail to support a plausible Title VII claim because plaintiff's Complaint alleges no facts connecting her termination and alleged constructive discharge to sex discrimination. Defendants asserted this same argument in their Motion to Dismiss plaintiff's original Complaint and their Motion to Dismiss plaintiff's First Amended Complaint. Doc. 10 at 12; Doc. 19 at 11–13. Plaintiff thus has received ample notice about the shortcomings of her Title VII claims. And, plaintiff has had

many opportunities to cure those deficiencies in an amended pleading. But she's failed to do so. Also, plaintiff hasn't submitted a Reply to defendants' Responses opposing her Motion for Leave to File a Second Amended Complaint. Thus, she hasn't contested defendants' arguments about the futility of her Title VII claims as she has pleaded them in her proposed Second Amended Complaint.

For all these reasons, the court denies plaintiff's request to file a Second Amended Complaint to assert her Title VII discrimination claim in the "First Cause of Action." This claim—as pleaded—fails to state a claim for relief, and thus is subject to Rule 12(b)(6) dismissal.

### b. Title VII Harassment and Constructive Discharge Claim

The proposed Second Amended Complaint's "Second Cause of Action" suffers from the same deficiencies as its "First Cause of Action." The "Second Cause of Action" asserts a Title VII claim for hostile work environment and constructive discharge. Doc. 47-1 at 15–16 (Second Am. Compl. ¶¶ 97–103). It alleges, generally, that defendant subjected plaintiff to harassment and a hostile work environment that was so severe that plaintiff was constructively terminated from her employment. But again, the proposed pleading alleges no facts capable of supporting a finding or inference that any alleged harassment directed at plaintiff was *based on her sex*. Indeed, the "Second Cause of Action" never even mentions plaintiff's sex, much less asserts that the reason for alleged harassment was based on plaintiff's sex. Without such allegations, plaintiff's Title VII harassment claim fails to state a claim as a matter of law. *See Bird v. W. Valley City*, 832 F.3d 1188, 1205 (10th Cir. 2016) (explaining that a Title VII hostile work environment claim requires "severe and pervasive harassment *based on gender*" (citation and internal quotation marks omitted) (emphasis in original)).

The court denies plaintiff's request to file a Second Amended Complaint to assert her Title VII harassment and constructive discharge claim in the "Second Cause of Action." Plaintiff's second Title VII claim—as pleaded in the proposed Second Amended Complaint—fails to state a claim for relief. Thus, the claim is subject to Rule 12(b)(6) dismissal.

### c. Plaintiff's State Law Claims

The court declines to consider whether it should grant plaintiff leave to file the state law claims asserted in her proposed Second Amended Complaint. Because the court has concluded that plaintiff's proposed Second Amended Complaint fails to state plausible Title VII claims, the court now considers whether plaintiff's current pleading—the First Amended Complaint—states plausible Title VII claims. If it doesn't, the court must dismiss those Title VII claims, and it may decline supplemental jurisdiction over plaintiff's remaining state law claims. *See, e.g.*, *Lewis v. Commerce Bank & Tr.*, 333 F. Supp. 2d 1019, 1022 (D. Kan. 2004) (denying plaintiff's motion to amend § 1981 claims because plaintiff failed to state a violation of federal law, declining to exercise jurisdiction over plaintiff's remaining state law claims, and dismissing the case).

### B. Defendants' Motions to Dismiss

Defendants' Motions to Dismiss are directed at plaintiff's First Amended Complaint. Docs. 16 & 18. In its motion, defendant City of Wichita asserts that plaintiff's Title VII claims—asserted in the first two causes of action in plaintiff's First Amended Complaint—fail to state a plausible claim for relief. Doc. 19 at 9–13. Thus, defendant City of Wichita asks the court to dismiss these claims under Fed. R. Civ. P. 12(b)(6).

As already discussed, plaintiff has pleaded her federal Title VII claims identically in her First Amended Complaint and proposed Second Amended Complaint. *Compare* Doc. 47-1 at 14–16 (Second Am. Compl. ¶¶ 92–103) *with* Doc. 13 at 11–13 (First Am. Compl. ¶¶ 78–89).

The court has concluded that these allegations fail to state plausible Title VII claims because plaintiff alleges no facts supporting a plausible inference that defendant City of Wichita discriminated against plaintiff, subjected her to a hostile work environment, or constructively discharged her from employment *based on her sex*. *See supra* Part II.A.2.a.–b. Plaintiff's Title VII claims thus fail to state a claim as a matter of law. And the court dismisses plaintiff's Title VII claims under Rule 12(b)(6).

Because the court has concluded that plaintiff has failed to state a claim for relief under federal law, the court may decline to exercise supplemental jurisdiction over her remaining state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction [when] the district court has dismissed all claims over which it has original jurisdiction.").

The decision whether to exercise supplemental jurisdiction in this circumstance is committed to the district court's sound discretion. *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138–39 (10th Cir. 2004). But though the decision is a discretionary one, the Tenth Circuit has expressed the preference that a district court decline jurisdiction over state law claims when it dismisses all of the federal claims. *See Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, *and usually should*, decline to exercise jurisdiction over any remaining state claims." (emphasis added)). The Supreme Court has directed district courts—when deciding whether to maintain supplemental jurisdiction over state law claims—to consider "the values of judicial economy, convenience, fairness, and comity . . . ." *Carnegie- Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also Wittner v. Banner Health*, 720 F.3d 770, 781 (10th Cir. 2013) ("[W]e have said the court should consider retaining state claims when, given the nature and extent of pretrial

14

proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction." (citation and internal quotation marks omitted)).

Exercising its discretion, the court declines to assert supplemental jurisdiction over plaintiff's state law claims. All of the governing factors favor this outcome. Dismissing plaintiff's state law claims without prejudice will waste no judicial resources because no pretrial proceedings or discovery have transpired. Also, this result does not treat plaintiff unfairly. Title 28 U.S.C. § 1367 tolls the statute of limitations for state law claims while they are pending in federal court and for 30 days after they are dismissed "unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d); *see also Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010). Kansas's "saving statute" affords plaintiffs six months to commence a new action if an earlier, timely filed action has failed "otherwise than upon the merits." Kan. Stat. Ann. § 60-518. A dismissal "otherwise than upon the merits" includes a dismissal without prejudice. *Rogers v. Williams, Larson, Voss, Strobel & Estes*, 777 P.2d 836, 839 (Kan. 1989). In sum, nothing will prevent plaintiff from refiling her state law claims in Kansas court, so long as she timely files them.

The Kansas state courts also provide the same level of convenience and fairness as federal courts. And, importantly, comity strongly favors remand. Kansas state courts have a strong interest in deciding purely state law claims—as are plaintiff's claims for intentional infliction of emotional distress, negligent infliction of emotional distress, negligent supervision, and defamation. *Brooks*, 614 F.3d at 1230 ("'[N]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary.'") (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)).

15

Because all of the factors favor dismissal without prejudice and because the court finds no compelling reason to reach a contrary result, the court declines to exercise its supplemental jurisdiction over plaintiff's remaining state law claims. The court thus dismisses plaintiff's state law claims without prejudice.

**III.    Conclusion**

For reasons explained, the court denies plaintiff's Motion for Leave to File a Second Amended Complaint to the extent it seeks to amend plaintiff's federal Title VII claims. And, the court declines to consider the portion of plaintiff's Motion for Leave to File a Second Amended Complaint that seeks to file amended state law claims. The court thus denies this portion of plaintiff's motion without prejudice.

Also, the court grants defendants City of Wichita, Robert Layton, and Gordon Ramsey's Motion to Dismiss (Doc. 18) in part and denies it part. The court dismisses plaintiff's federal Title VII claims under Fed. R. Civ. P. 12(b)(6) because they fail to state a plausible claim for relief. The court declines to exercise supplemental jurisdiction over the state law claims that plaintiff asserts against these defendants, and thus dismisses the state law claims asserted against defendants City of Wichita, Robert Layton, and Gordon Ramsey without prejudice.

Also, the court denies defendant Lance Oldridge's Motion to Dismiss (Doc. 16) without prejudice. The court declines to exercise supplemental jurisdiction over the state law claims plaintiff asserts against defendant Oldridge. The court thus dismisses plaintiff's state law claims against defendant Oldridge without prejudice.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff Tiffany Dahlquist's Motion for Leave to File a Second Amended Complaint (Doc. 47) is denied. The court denies plaintiff's Motion for Leave to File a Second Amended Complaint to the extent it

16

seeks to amend her federal Title VII claims because her proposed Title VII claims fail to state a plausible claim, and thus her proposed amendments are futile. The court declines to consider the portion of plaintiff's Motion for Leave to File a Second Amended Complaint that seeks to file amended state law claims. The court thus denies that portion of plaintiff's motion without prejudice.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendants City of Wichita, Robert Layton, and Gordon Ramsey's Motion to Dismiss (Doc. 18) is granted in part and denied in part. The court dismisses plaintiff's Title VII claims under Fed. R. Civ. P. 12(b)(6) because they fail to state a plausible claim for relief. The court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims, and thus, the court dismisses the state law claims without prejudice.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant Lance Oldridge's Motion to Dismiss (Doc. 16) is denied without prejudice. The court declines to exercise supplemental jurisdiction over plaintiff's state law claims asserted against defendant Oldridge, and thus, the court dismisses the state law claims asserted against defendant Oldridge without prejudice.

The Clerk shall enter a judgment consistent with this ruling.

**IT IS SO ORDERED.**

**Dated this 12th day of March, 2019, at Kansas City, Kansas.**

               **s/ Daniel D. Crabtree**
               **Daniel D. Crabtree**
               **United States District Judge**